**WALTER et al. v. THE CANADARAGO.**

Nos. 346, 347.

Circuit Court of Appeals, Second Circuit.

July 2, 1942.

Christopher E. Heckman, of New York City (Foley & Martin and James A. Martin, all of New York City, on the brief), for respondent-appellant.

George B. Warburton, of New York City, for libelant-appellee Walter.

Gerald J. McKernan, of New York City (Macklin, Brown, Lenahan & Speer, of New York City, on the brief), for libelant-appellee International Salt Co., Inc.

William Weymar, Jr., of New York City, for tug Quantico.

Before CHASE, CLARK, and FRANK, Circuit Judges.

PER CURIAM.

Respondent, having been held responsible for the stranding of libelant Walter's barges and damage to their cargoes of salt, owned by libelant International

Salt Company, Inc., from the wash of respondent's tug Canadarago when passing them in the Barge Canal near Utica on August 2, 1938, now seeks review of what are essentially questions of facts as to the cause and the amount of the loss. Its chief claim here is that intervening and extraneous causes were responsible for at least 'the major part of the loss, and it cites especially a striking of a lock gate by the barge L & L 100 just prior to the sinking of the latter four days after the original accident. But the district judge considered this matter originally; thereafter the commissioner appointed by the court heard and carefully analyzed the conflicting testimony; and finally the district judge confirmed the commissioner's report after full hearing. They agreed that the claimed intervening accidents were trivial and that the damage was directly due to respondent's faulty navigation on August 2. Under our settled rules we are unwilling to attempt a further and a different reconstruction of the testimony. This applies also to the items of damage, particularly as to the value of the lost barge where the evidence was in sharp conflict, and covers all but one item based on transportation charges awarded the Salt Company.

The parties and the court below were agreed that the cargo loss was to be governed by the rule of The Scotland, 105 U.S. 24, 35, 26 L.Ed. 1001, whereby the Salt Company would be entitled to the cost or market value of the salt at the place of shipment, plus charges of lading and transportation. The only question here is as to the latter item, which we think clearly means charges of transportation actually incurred, whereas the commissioner fixed a rate, which was the market value of the salt at New York City and was determined in part at least by the cost of transportation by railroad. But this is improper, since it gives libelant a measure of profit at destination in New York, rather than makes it merely whole at the point of shipment, where presumably it could buy new cargoes and start out anew on its business venture. Standard Marine Ins. Co. v. Scottish Metropolitan Assur. Co., 283 U.S. 284, 288, 51 S.Ct. 371, 75 L.Ed. 1037. In confirming the report, the court held that this rate—$15.30 per ton for salt in 100-pound bags—was its value at the time and place of shipment, and the correspondence of this value with the New York rate was without significance. But this conclusion appears to be without justification in the evidence which, as we read it, showed the sale price at Watkins, New York, the point of shipment, as $11.-30 per ton in 100-pound bags, and $10.80 per ton in 200-pound bags, when the cost of bags was included. (The figure given was $9.00 per ton in 100-pound bags when the purchaser furnished bags; but no reason appears for excluding that item.) The transportation costs appear to have been $2.20 per ton, with an allowance of 45¢ per ton for amounts over 600 tons per barge. Hence there seems no basis for an award in any event in excess of $13.50 per ton for 100-pound bags, less 45¢ for amounts over 600 tons per barge, and with necessary adjustments for the 200-pound bags and for certain variations of costs with respect to the L & L 103's cargo, which contained four different grades of salt. We do not attempt to make a final computation of the amount; since it is a matter of actual cost of this shipment, the parties should have no difficulty in agreeing upon the figure.

If the parties will stipulate as to the amount of reduction in the cargo award thus required, within ten days, the award will be modified accordingly and affirmed, without costs to either party; otherwise it will be returned to the court below for recomputation. The decree in favor of libelant Walter is affirmed with costs.